610 S.E.2d 341

**Kenneth McKENZIE, Plaintiff Below, Appellant,**

v.

**CARROLL INTERNATIONAL CORPORATION, dba Gaylord East and/or Keyser Stainless Industrial Park, and Byron Read, Defendants Below, Appellees.**

No. 31721.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Nov. 12, 2004.

Allan N. Karlin, Esq., Jane E. Peak, Esq., Morgantown, for Appellant.

Robert H. Sweeney, Esq., Jenkins Fenstermaker, Huntington, Jerome F. Buch, Esq., Seyfarth Shaw, Esq., Chicago, IL, Annamaria L. Nields, Esq., Seyfarth Shaw, Esq., Washington, DC, for Appellee.

DAVIS, Justice.

Kenneth McKenzie, appellant/plaintiff below (hereinafter "Mr. McKenzie"), appeals from an order of the Circuit Court of Mineral County that denied his motion for a new trial. This case involved various claims of employment discrimination by Mr. McKenzie against his former employer, Carroll International Corporation (hereinafter "Carroll"), appellee/defendant below. The case was tried before a jury, and a verdict was returned in favor of Carroll. Here, Mr. McKenzie has made the following assignments of error: (1) prohibiting evidence of discrimination against other employees, (2) denial of motion in limine, (3) refusal to admit physical therapy records, (4) admission of hearsay statements by Byron Read, (5) refusal to admit letter by Byron Read, (6) admission of hearsay statements by Robert Grapes, and (7) other errors. After a careful review of the briefs and record, we reverse and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. McKenzie was hired by Carroll in 1982[1] as a welder.[2] At the time of hiring, Mr. McKenzie was 42 years old. Mr. McKenzie voluntarily quit his job after a few months of employment. He was rehired by

---

**1.** Mr. McKenzie was actually hired by a company called Gaylord East. The company was bought by Carroll in 1991.

**2.** Carroll manufactures various types of industrial kitchen and restaurant equipment.

Carroll in 1984. In March, 1995, Mr. McKenzie suffered a work-related injury to his right hand that required surgery on two separate occasions. After the first surgery, Mr. McKenzie attempted to return to work. He was informed by Carroll that he had to have recovered 100% before he would be allowed to return to work. Mr. McKenzie thereafter underwent hand surgery for a second time. In May of 1996, Mr. McKenzie produced a medical slip authorizing his return to work. Carroll subsequently allowed him to return to work.

In August of 1996, Mr. McKenzie and eight other employees were laid off by Carroll.[3] As a result of being laid off, Mr. McKenzie filed a grievance with the employee union. In the grievance, Mr. McKenzie contended that he should not have been laid off because of his seniority rights. However, Mr. McKenzie was informed that the union contract did not include a seniority provision. Mr. McKenzie thereafter abandoned the union grievance. He then filed a discrimination claim with the West Virginia Human Rights Commission. The Commission conducted an initial investigation, and, after determining that there was insufficient evidence of discrimination, issued a "no probable cause" order.

In March of 1998, Mr. McKenzie filed the instant action against Carroll. Mr. McKenzie alleged in his complaint that Carroll laid him off because of his age and that Carroll failed to recall him because of his age, his perceived disability and because he filed a workers' compensation claim.[4] The case was tried before a jury in August of 2002. After a four-day trial, the jury returned a verdict in favor of Carroll. Subsequent to the denial of his post-trial motions, Mr. McKenzie filed this appeal.

**3.** Except for Mr. McKenzie and another worker, the other employees who were laid off were under the age of forty.

**4.** During the pendency of the lawsuit, Mr. McKenzie was recalled to work in December of 1998. However, over the course of the next two years, Mr. McKenzie was laid off twice because of work shortages. In May of 2000, Mr. McKenzie was fired because of insubordinate conduct:

## II.

## STANDARD OF REVIEW

This case appeal stems from an order of the circuit court denying Mr. McKenzie's motion for a new trial. As a general matter, we have held that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). This Court has held more specifically that "the circuit court's ruling concerning a new trial will be reviewed for an abuse of discretion, any underlying factual findings will be reviewed under a clearly erroneous standard, and any questions of law will be reviewed de novo." *Matheny v. Fairmont Gen. Hosp., Inc.*, 212 W.Va. 740, 744, 575 S.E.2d 350, 354 (2002). Additional standards for our review that are pertinent to the specific issues raised are discussed in connection with the matters to which they relate.

## III.

## DISCUSSION

### A.  Prohibiting Evidence of Discrimination Against Other Employees

The first issue raised by Mr. McKenzie is that the trial court committed error by prohibiting him from calling witnesses who would provide evidence that they were victims of age discrimination by Carroll.[5] Mr. McKenzie sought to introduce evidence of other alleged acts of age discrimination by Carroll under Rule 404(b) of the West Virginia Rules of Evidence.[6] The issue arose in

he had called the plant manager a liar in front of other employees.

**5.** Mr. McKenzie's brief lists six witnesses that were precluded from giving age discrimination testimony.

**6.** Rule 404(b) provides, in part, that

"[e]vidence of other ... wrongs, or acts is not admissible to prove the character of a

the context of a pretrial motion in limine by Carroll that sought to preclude testimony from such witnesses. The trial court granted the motion, but permitted evidence of other alleged age discrimination by Carroll only in the form of statistics. In making its ruling, the trial court found that the witnesses did not "have any personal knowledge about what they are testifying to with regard to [Mr. McKenzie]." The court also found that the probative value of such evidence was outweighed by its prejudicial effect.

Our cases have pointed out, and we so hold, that a trial court's ruling on a motion in limine is reviewed on appeal for an abuse of discretion. *See Barlow v. Hester Indus., Inc.,* 198 W.Va. 118, 130–31, 479 S.E.2d 628, 640–41 (1996); *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 113, 459 S.E.2d 374, 390 (1995). Additionally, "we are required to address specific areas of evidence law regarding motions in limine." *Tennant,* 194 W.Va. at 112, 459 S.E.2d at 389. In that regard, this Court reviews a circuit court's decision on whether "to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." *State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).

Carroll contends that the trial court's ruling was correct and that Mr. McKenzie was not precluded from presenting other evidence of alleged age discrimination. Carroll represents that, during the trial, Mr. McKenzie presented evidence of layoff reports, statistics and witness testimony regarding the names, ages and dates of layoff and recall for other employees. Carroll has also cited to federal cases that prohibited plaintiffs in age discrimination cases from calling witnesses to testify about their own age discrimination experiences. Specifically, Carroll relies upon the decision in *Moorhouse v. Boeing Co.,* 501 F.Supp. 390 (E.D.Pa.1980), which stated:

> Had the Court permitted each of the proposed witnesses to testify about the circumstances surrounding his own lay off, each, in essence, would have presented a prima facie case of age discrimination. Defendants then would have been placed

in the position of either presenting the justification for each witnesses' lay off, or of allowing the testimony to stand unrebutted. This latter alternative, of course, would have had an obvious prejudicial impact on the jury's consideration of [plaintiff's] case.

*Moorhouse,* 501 F.Supp. at 393 (footnote omitted). *See Haskell v. Kaman Corp.,* 743 F.2d 113, 122 (2d Cir.1984) ("Since the testimony of the six former Company officers as to the circumstances of their terminations and those of other Company officers was insufficient to show a pattern and practice of discrimination, it was not relevant to the question of whether [plaintiff] was terminated for age-related reasons. Moreover, the probative value of the testimony was so 'substantially outweighed by the danger of unfair prejudice' that it definitely should have been excluded by the district court in accord with Fed.R.Evid. 403."); *Schrand v. Federal Pacific Elec. Co.,* 851 F.2d 152, 156 (6th Cir. 1988) ("The testimony of [two witnesses] about the alleged statement to them that they were being terminated because they were too old should have been excluded.... The fact that two employees of a national concern, ... were allegedly told they were being terminated because they were too old, is simply not relevant to the issue in this case.").

Mr. McKenzie has suggested that not all federal courts prohibit nonlitigant employees from testifying about age discrimination they experienced at the hands of their employers. Federal courts that admit such testimony do so on the grounds that "[t]he testimony of employees, other than plaintiff, is relevant in assessing the employer's discriminatory intent if the employees' testimony can logically or reasonably be tied to the adverse employment action taken against the plaintiff." *Minshall v. McGraw Hill Broad. Co., Inc.,* 323 F.3d 1273, 1285 (10th Cir.2003). *See Brennan v. GTE Gov't Sys. Corp.,* 150 F.3d 21, 27–28 (1st Cir.1998) ("Certainly comparative evidence in combination with data showing a disproportionate number of terminated

___

person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"

older employees is probative of age discrimination."); *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97–98 (7th Cir.1985) (permitting plaintiff to call two witnesses to testify that they were discriminated against by employer because of their age); *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent."); *Kneisley v. Hercules Inc.,* 577 F.Supp. 726, 731 (D.Del. 1983) (allowing plaintiff to call four former employees to testify that they were victims of age discrimination by employer).

Moreover, the federal courts that admit such evidence have held that "[t]he probative value of [evidence of] the employer's [discrimination] of other ... employees is especially high 'because of the inherent difficulty of proving state of mind.'" *Heyne v. Caruso,* 69 F.3d 1475, 1480 (9th Cir.1995) (quoting *Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1133 (4th Cir.1988)). *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1086 (3rd Cir.1996) ("Evidence of discrimination against other employees ... is relevant to 'whether one of the principal nondiscriminatory reasons asserted by [an employer] for its actions was in fact a pretext for ... discrimination.'" (quoting *Glass v. Philadelphia Elec. Co.,* 34 F.3d 188, 194. (3rd Cir.1994))); *Harpring v. Continental Oil Co.,* 628 F.2d 406, 409 (5th Cir.1980) ("[T]he testimony of ... similarly situated employees and the reasons for their discharge are relevant in proving a pattern and practice of age discrimination."); *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1104 (8th Cir.1988) ("Evidence of prior acts of discrimination is relevant to an employer's motive even where this evidence is not extensive enough to establish discriminatory animus itself."); *Heyne v. Caruso,* 69 F.3d 1475, 1480 (9th Cir.1995) ("Evidence of [employer's] sexual harassment of other female workers may be used ... to prove his motive or intent in discharging [plaintiff]."); *Stair v. Lehigh Valley Carpenters Local Union No. 600 of United Bhd. of Carpenters & Joiners of America,* 813 F.Supp. 1116, 1119 (E.D.Pa.1993) ("[E]vidence of past conduct or prior incidents of alleged discrimination has a tendency to make the existence of a fact that is of consequence—the defendant's discriminatory motive or intent—more probable than it would be without the evidence, and therefore such evidence is, as a general rule, relevant."); *Herber v. Boatmen's Bank of Tennessee,* 781 F.Supp. 1255, 1259 n. 3 (W.D.Tenn.1991) ("[E]vidence of discrimination against other employees may on occasion be probative of whether a defendant's employment action against a plaintiff employee was motivated by intentional discrimination."); *Buscemi v. Pepsico, Inc.,* 736 F.Supp. 1267, 1271 (S.D.N.Y.1990) ("[T]estimony or other evidence regarding discriminatory treatment of other employees would be probative of a discriminatory termination policy such as the one alleged here."); *LaDolce v. Bank Admin. Inst.,* 585 F.Supp. 975, 977 (N.D.Ill. 1984) ("[E]vidence or testimony regarding [employer's] prior discriminatory conduct with respect to employees other than [plaintiff] should [not] be excluded. Such evidence might support an inference of discrimination and is clearly relevant.").

■ Turning to the case at hand, we agree with Carroll that Mr. McKenzie was able to present raw data that suggested older employees were treated differently than younger employees. However, we do not believe that raw data should be the exclusive means by which a plaintiff may attempt to establish age discrimination. Thus, we agree with those federal courts that have found that raw data may be supplemented with testimony by employees or former employees who believe they were victims of employment discrimination.[7] Therefore, we hold that in an action brought for employment discrimination, a plaintiff may call witnesses to testify specifically about any incident of employment discrimination that the witnesses believe the defendant perpetrated against them, so long as the testimony is relevant to the type of employment discrimination that the plaintiff has alleged. "There are, however, limita-

---

7. Obviously we do not believe that a plaintiff should be allowed to parade dozens of witnesses to testify about their alleged discrimination experiences with an employer, but a single digit number of witnesses, as in this case, is not too burdensome or repetitious.

tions to the admissibility of such evidence. Incidents that are too remote in time or too dissimilar from a plaintiff's situation are not relevant." *Stair v. Lehigh Valley Carpenters Local Union No. 600 of United Bhd. of Carpenters & Joiners of America,* 813 F.Supp. 1116, 1119 (E.D.Pa.1993). In view of our holding, we find that it was reversible error for the trial court to preclude Mr. McKenzie from calling witnesses to testify about their own alleged experiences with age discrimination by Carroll.[8]

### B. Denial of Motion in Limine

■ Prior to trial, Mr. McKenzie filed a motion in limine to prevent Carroll from introducing evidence that the Human Rights Commission (hereinafter referred to as "the Commission") issued a "no probable cause" finding in the administrative proceeding. However, Mr. McKenzie wanted to be able to introduce evidence of other matters from the record obtained during the proceeding before the Commission. The trial court resolved the motion by holding that, if Mr. McKenzie presented any evidence concerning the claim filed with the Commission, Carroll would be permitted to introduce evidence of the "no probable cause" finding.

■ We have previously indicated that "[r]ulings on motions in limine lie within the trial court's discretion." *State v. Dillon,* 191 W.Va. 648, 662, 447 S.E.2d 583, 597 (1994). "Our function on ... appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion." *State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).

Mr. McKenzie argues that his motion in limine should have been granted without conditioning it upon his use of other evidence

involving the claim filed with the Commission. Stated more concisely, Mr. McKenzie is asking this Court to hold that a "no probable cause" finding by the Commission cannot be introduced into evidence. This appears to be an issue of first impression for this Court.

The United States Supreme Court has noted in passing that "[p]rior administrative findings made with respect to an employment discrimination claim may ... be admitted as evidence[.]" *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416, 432 n. 39 (1976) (citations omitted). Although *Chandler* indicated that information from the record of an administrative agency in an employment discrimination case may be introduced in a subsequent civil trial, federal courts are "split on the proper method for determining whether [such evidence] will be admissible in an employment discrimination case tried to a jury." *Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir.1990). A few federal courts appear to hold that evidence from an administrative proceeding is, per se, admissible hearsay under Rule 803(8)(C) of the Federal Rules of Evidence.[9] *See Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981); *Smith v. Universal Servs., Inc.,* 454 F.2d 154, 157–58 (5th Cir.1972); *Abrams v. Lightolier, Inc.,* 702 F.Supp. 509, 512 (D.N.J.1989); *Strickland v. American Can Co.,* 575 F.Supp. 1111, 1112 (N.D.Ga.1983).

Other federal courts take the position that "the admissibility decision is to be made by the trial court in the exercise of its discretion." *Abrams v. Lightolier, Inc.,* 702 F.Supp. 509, 512 (D.N.J.1989). *See Walton v. Eaton Corp.,* 563 F.2d 66, 74–75 (3rd Cir. 1977); *Cox v. Babcock & Wilcox Co.,* 471 F.2d 13, 15 (4th Cir.1972); *Johnson v. Yellow Freight Sys.,* 734 F.2d 1304, 1309 (8th Cir. 1984); *Barfield v. Orange County,* 911 F.2d

---

**8.** The extent to which the witnesses were prepared to testify is not clear to this Court. However, the witnesses should only be permitted to testify about age discrimination as it relates to them personally-not other employees.

**9.** Federal Rule 803(8)(C) provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Rule 803(8)(C) of the West Virginia Rules of Evidence is identical to its federal counterpart.

644, 650 (11th Cir.1990); *Cortes v. Maxus Exploration Co.,* 758 F.Supp. 1182, 1183 (S.D.Tex.1991). The appellate court in *Barfield* indicated that when a trial court exercises its discretion in determining whether to admit findings by an administrative agency, the court "may be guided by such considerations as whether the report contains legal conclusions in addition to its factual content, whether the report raises questions of trustworthiness under Rule 803(8)(C), and whether it presents problems cognizable under Rule 403." [10] *Barfield,* 911 F.2d at 650.

■ We believe the position adopted by the *Barfield* line of cases have the better approach to this issue. Consequently, we hold that in an action alleging unlawful discrimination under the West Virginia Human Rights Act, a trial court may, in its discretion, admit evidence from the record of a prior administrative proceeding held before the West Virginia Human Rights Commission. In making the admissibility determination, a trial court should consider whether the evidence sought to be introduced (1) contains legal conclusions in addition to its factual content; (2) raises questions of trustworthiness under W. Va. R. Evid. 803(8)(C); (3) presents problems cognizable under W. Va. R. Evid. 403; and (4) any other relevant factor.

In the instant case, Mr. McKenzie sought to preclude Carroll from introducing evidence of the "no probable cause" determination made by the Commission. In the exercise of its discretion, the trial court found that Carroll was barred from introducing such information, but only if Mr. McKenzie did not present evidence of any other information contained in the Commission's records. We cannot say that the trial court abused its discretion in the manner in which it resolved the motion in limine. We agree with Carroll that Mr. McKenzie sought to leave the door open for him to selectively inform the jury about matters contained in the Commission's records, while simultaneously preventing the jury from learning of matters that Carroll felt were relevant. *See In re Burks,* 206 W.Va. 429, 432 n. 1, 525 S.E.2d 310, 313 n. 1 (1999) (" '[S]auce for the goose' is also 'sauce for the gander.' ").

### C. Refusal to Admit Physical Therapy Records

■ During the trial, Mr. McKenzie sought to introduce statements that he made to his physical therapist which were contained in his physical therapy records. The statements indicated that he wanted to return to work while undergoing physical therapy. The trial court refused to admit the evidence on the grounds that the physical therapy records were not medical records. Mr. McKenzie argues that the records were admissible under Rule 803(4) of the West Virginia Rules of Evidence.[11]

We have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). Rule 803(4) provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis of treatment.

**10.** Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403 of the West Virginia Rules of Evidence is identical to its federal counterpart.

**11.** Mr. McKenzie also argues that the records were admissible under Rule 803(6) and Rule 801(d)(1)(B). We need not consider these alternative grounds.

Professor Cleckley commented on the scope of Rule 803(4) in his treatise on the rules of evidence as follows:

Statements, to qualify under the rule, need not be made specifically to a physician. The statement may be directed to such personnel as nurses, technicians, or even family members as long as the purpose of the statement is for diagnosis or treatment. It is the motive to promote diagnosis and treatment, and not the fact as to whom the statements were made, that gives such statements their indicia of trustworthiness.

Franklin D. Cleckley, Vol. 2, *Handbook on Evidence for West Virginia Lawyers*, § 8–3(B)(4), at 8–129 (2000). The prior decisions of this Court have acknowledged that Rule 803(4) is not confined to statements made only to physicians. *See State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001) (concluding that statements made by a child abuse victim, during play therapy treatment with a trained social worker, counselor or psychologist, may be admitted under Rule 803(4)); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) (determining that statements made by children during treatment with a psychologist may be admitted under Rule 803(4)).

■■■ This Court held in *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), that, to be admissible under Rule 803(4), a statement must meet two criteria:

The two-part test set for admitting hearsay statements pursuant to W. Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting [diagnosis or] treatment, and (2) the content of the statement must be such as is reasonably relied upon by [health care providers] in treatment or diagnosis.

Syl. pt. 5, *Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123.

Clearly, Mr. McKenzie was undergoing physical therapy to rehabilitate the work-related injury to his hand. During the course of that treatment, Mr. McKenzie made several statements that were recorded by his physical therapist. Those statements indicated that Mr. McKenzie wanted to return to work, but that Carroll would not permit him to do so until he was 100% rehabilitated. We believe that the statements made by Mr. McKenzie to his physical therapist satisfy the *Edward Charles L.* factors, and should not have been excluded on the grounds that they did not come within the medical records exception of Rule 803(4). *See Puckett v. Porsche Cars of North America, Inc.*, 976 F.Supp. 957, 963 (D.Nev.1997) (finding statements made to a physical therapist admissible under Fed.R.Evid. 803(4)); *Galli v. Reutter*, 148 Mich.App. 313, 384 N.W.2d 43, 46 (1986) (finding statements made to physical therapist were admissible under the medical diagnosis or treatment exception set forth in Mich. R. Evid. 803(4)). Although we find that the trial court erroneously precluded the statements on the grounds that they were not medical records under Rule 803(4), we make no ruling on whether or not Mr. McKenzie established a proper foundation for introducing the statements.[12]

### D. Admission of Hearsay Statements by Byron Read

■■■ Mr. McKenzie finally contends that the trial court committed error in allowing the introduction of statements by Byron Read, a deceased former plant manager for Carroll. The statements were handwritten notes by Mr. Read that were contained in "job cost" records that were generated during the period 1999 to 2000.[13] These handwritten notes reflect that Mr. McKenzie performed his job slower than other employees. The principal argument by Mr. McKenzie is that those notes were generated after the litigation began and were therefore improper

---

**12.** Carroll has presented other grounds in this appeal as to why the statements should not have been admitted. We, however, are only concerned with the grounds chosen by the circuit court at the time of its ruling. Should this issue arise in a second trial, neither party is precluded

from arguing other grounds for admitting or excluding the statements.

**13.** The "job cost" records were computer printouts that reflected how long it took each employee to perform a task.

self-serving assessments of his work by Carroll.

We have previously held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by, State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994). *Accord* Syl. pt. 7, *State ex rel. Weirton Med. Ctr. v. Mazzone,* 214 W.Va. 146, 587 S.E.2d 122 (2002).

▮▮▮▮ Carroll argues on appeal that the handwritten notes were admissible as a business record under Rule 803(6) of the West Virginia Rules of Evidence.[14] This Court addressed the application of Rule 803(6) in Syllabus point 7 of *Lacy v. CSX Transportation, Inc.,* 205 W.Va. 630, 520 S.E.2d 418 (1999):

> Before evidence may be admitted under W. Va. R. Evid. 803(6), the proponent must demonstrate that such evidence is (1) a memorandum, report, record, or data compilation, in any form; (2) concerning acts, events, conditions, opinions or diagnoses; (3) made at or near the time of the matters set forth; (4) by, or from information transmitted by, a person with knowledge of those matters; (5) that the record was kept in the course of a regularly conducted activity; and (6) that it was made by the regularly conducted activity as a regular practice.

We also held in Syllabus point 12 of *Lacy,* that "[a] record of a regularly conducted activity that otherwise meets the foundational requirements of W. Va. R. Evid. 803(6) is presumptively trustworthy, and the burden to prove that the proffered evidence was generated under untrustworthy circumstances rests upon the party opposing its admission." 205 W.Va. 630, 520 S.E.2d 418.

The facts developed at trial in this case clearly establish that the handwritten notes of Mr. Read fall squarely under Rule 803(6) as a record of a regularly conducted business activity. Carroll presented evidence that Mr. Read routinely wrote comments about the performance of employees on the "job cost" records. Consequently, we find no error in the admission of the notes by Mr. Read that were contained in the "job cost" records.[15]

## IV.

## CONCLUSION

The circuit court's order denying Mr. McKenzie's motion for a new trial is reversed. This case is remanded for a new trial consistent with this opinion.

Reversed and Remanded.

---

**14.** Rule 803(6) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**15.** Mr. McKenzie additionally assigned error to issues regarding (1) the refusal to admit a letter by Byron Read, (2) the admission of hearsay statements by Robert Grapes, and (3) several issues raised as other errors. "We do not find merit in those issues and therefore we summarily reject them." *State ex rel. Caton v. Sanders,* 215 W.Va. 755, 763 n. 8, 601 S.E.2d 75, 83 n. 8 (2004).