# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0989** (Wood County 18-F-144)

**Brandon Charles Greiner,**
**Defendant Below, Petitioner**

**FILED**

**February 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brandon Charles Greiner, by counsel D. Shane McCullough, appeals the Circuit Court of Wood County's October 19, 2018, sentencing order following his convictions for fleeing from an officer while under the influence of alcohol and fleeing from an officer with reckless disregard. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 24, 2018, at approximately 3:30 a.m., Patrolman Richard Sanchez, of the Parkersburg City Police Department, responded to the Ohio Avenue area in Parkersburg, West Virginia, following a report from an area McDonald's of an intoxicated driver of a dark-colored sedan bearing a license plate beginning with "O3" in the drive-thru lane. As documented in his police report, Patrolman Sanchez noted the sedan traveling at a high rate of speed upon reaching the area of the McDonald's. As Patrolman Sanchez attempted to catch up to the vehicle, he observed it make "a wide abrupt turn into the oncoming lane while continuing at a high rate of speed" and then turn around in a driveway, nearly striking Patrolman Sanchez's vehicle as it passed in the opposite direction. As it passed, Patrolman Sanchez saw that the vehicle's license plate began with "O3." Patrolman Sanchez turned around to continue following the vehicle and witnessed the driver fail to stop at a stop sign. The officer detailed that he traveled at speeds greater than seventy-five miles per hour in a twenty-five-mile-per-hour zone in an attempt to catch up to the vehicle. Patrolman Sanchez initiated his emergency lights and siren in the 3000 block of Fairview Avenue as the vehicle made an abrupt left turn and failed to yield to an oncoming vehicle. The vehicle continued, with Patrolman Sanchez following, until parking at an apartment complex.

After coming to a stop at the apartment complex, Patrolman Sanchez approached the vehicle with his gun drawn and observed the driver exit the vehicle with a McDonald's bag in his

1

right hand. Despite verbal commands to stop, the driver continued toward Patrolman Sanchez and reached his left hand behind his back. Eventually, the driver placed the McDonald's bag on the trunk of his vehicle and placed his right hand on the trunk. As the driver took his eyes off of Patrolman Sanchez, Patrolman Sanchez holstered his weapon and shoved the driver against the trunk of vehicle given the driver's continued failure to show his left hand. The driver continued to resist, but Patrolman Sanchez "gain[ed] compliance" and handcuffed the driver, identified as petitioner. Patrolman Sanchez noted a strong odor of alcohol on petitioner; lethargic movements; red, watery eyes; and that petitioner mumbled as he spoke. Patrolman Sanchez then transported petitioner to the hospital.[1]

Patrolman Sanchez further documented that once they arrived at the hospital, petitioner "got in [Patrolman Sanchez's] face and stuck his chest out as if to intimidate" the officer. Petitioner was escorted into the hospital and handcuffed to a bed. When a nurse asked the officer to release one of petitioner's arms to obtain petitioner's vitals, petitioner reportedly "began yelling at staff and officers making the statements that 'Your [sic] Dead' as he was punching the air with [his] now released hand." Petitioner also reportedly yelled "you're dead, you're [expletive] dead." After petitioner was treated for minor abrasions, Patrolman Sanchez transported him to the police department for processing. There, petitioner refused field sobriety tests and twice refused the Intoximeter test (the breath test for alcohol). Petitioner was ultimately indicted on one count each of fleeing from an officer while under the influence of alcohol, fleeing from an officer with reckless disregard, and driving while under the influence.

Petitioner moved in limine to prohibit the State from introducing evidence of petitioner's behavior at the time of his arrest and while at the hospital, including evidence that he was "combative, aggressive, intimidating, or being non-compliant with being taken into physical custody." Petitioner also moved to exclude references to his expletive-containing statements. Before trial started on August 23, 2018, the court considered petitioner's motion. The State argued that the evidence petitioner sought to exclude was relevant to a determination of intoxication. Given petitioner's refusals to take field sobriety or Intoximeter tests, there were no results of these tests available, and Patrolman Sanchez's observations of petitioner's appearance and behavior were the only evidence of his alleged intoxication. The court denied petitioner's motion, finding "that the probative value [of this evidence] is not substantially outweighed by the danger of unfair prejudice." The court noted that belligerence "can be a trait of someone who is under the influence of alcohol," and concluded that so long as "an appropriate foundation is laid for some of the signs and symptoms that the officer looks for, I don't believe that the probative value would be substantially outweighed."

Patrolman Sanchez's testimony at petitioner's trial was largely consistent with the events documented in his police report. He detailed that when he first observed petitioner's taillights, he "could tell it was going at a high rate of speed, because I'm doing thirty-five, and having to increase speed to catch up to it." He recounted to the jury petitioner's near collision with him after turning around in the driveway, failure to stop at the stop sign, and high rates of speed. With respect to when he activated his lights and siren, Patrolman Sanchez testified that he did so "just prior to"

---

[1] Patrolman Sanchez stated that department policy instructs officers to take an individual to the hospital when an officer is forced to "go[] hands on" with that individual.

the location of Parkersburg Catholic High School ("PCHS"). The officer continued, "We're talking yardage, probably seventy-five yards prior to [PCHS] there on your right-hand side. And at this point in time, I was still accelerating trying to catch up with the [petitioner]," who "was right there at the first entrance to" PCHS, approximately twenty-five yards from him. Patrolman Sanchez stated that his lights "absolutely" were visible from twenty-five yards and the siren also audible from that distance; yet, according to the officer, petitioner increased his speed, requiring Patrolman Sanchez to drive over seventy-five miles per hour in a twenty-five-mile-per-hour zone.

Patrolman Sanchez testified that, in his experience, drivers do not accelerate once he has initiated his lights and siren. If a driver cannot pull over immediately, he or she will "signal, at least give me notice they're trying to pull over." But petitioner made no such indication, and the officer further noted that in the area between where he activated his lights and siren and the apartment complex at which petitioner ultimately stopped, there were parking lots and side streets on which petitioner could have pulled over.

In light of his work on the midnight shift and training at the State Police Academy, Patrolman Sanchez also testified to being familiar with the signs of alcohol intoxication. He stated that he has made arrests for public intoxication and driving under the influence "multiple times." Based on his experience and training, petitioner's lethargic movements; red, watery, glassy eyes; confused look; odor of alcohol on his breath; being "off-centered" and "off-balance"; failure to comply with verbal directives; verbally threatening behavior; and belligerence led the officer to conclude that petitioner was intoxicated.

On cross-examination, petitioner questioned Patrolman Sanchez about his testimony given at petitioner's preliminary hearing. At the preliminary hearing, Patrolman Sanchez stated that he activated his lights and siren "past" PCHS. In explaining the discrepancy between that testimony and his testimony at trial, Patrolman Sanchez noted that he also testified at the preliminary hearing that he activated his lights and siren within the 3000 block of Fairview Avenue, and PCHS sits in the 3000 block.

Following the State's case-in-chief, petitioner moved for judgment of acquittal arguing that the State "simply h[as] not presented enough evidence for the jury to deliberate on this case." The court denied the motion.

Petitioner testified that, on the day in question, his birthday, he had worked the late shift at a restaurant and then celebrated with two beers after work. After drinking these beers, he stopped at McDonald's before heading home. Petitioner also explained that he had recently moved and, as a result, was unfamiliar with the area, which explained his need to turn around in the driveway on his way home from McDonald's. Petitioner denied seeing Patrolman Sanchez attempting to pull him over; therefore, petitioner submitted that the confusion documented by Patrolman Sanchez was due to the surprise of seeing the officer with a handgun pointed at him once petitioner had parked and exited his vehicle. Petitioner admitted to saying "some choice words to the officer," but justified his remarks by stating that he was "pretty well outraged at this point at the way I'm being treated." Petitioner also denied being offered field sobriety or Intoximeter tests. Although petitioner admitted to driving five to ten miles per hour over the speed limit, he denied driving as fast as Patrolman Sanchez claimed.

3

After petitioner testified, the defense rested and renewed its prior motion for judgment of acquittal. The circuit court again denied the motion. The jury found petitioner guilty of fleeing from an officer while under the influence of alcohol and of fleeing from an officer with reckless disregard.[2]

The parties appeared for sentencing on October 9, 2018. Petitioner argued for alternative sentencing, but the circuit court found that imprisonment was appropriate because petitioner lied on the stand,[3] has a prior fleeing charge, previously violated probation, and created a substantial danger to the public in fleeing from the officer in the instant case. Accordingly, the court sentenced petitioner to concurrent terms of incarceration of not less than three nor more than ten years for his fleeing from an officer while under the influence of alcohol conviction and not less than one nor more than five years for his fleeing from an officer with reckless disregard conviction. The court's sentencing order was entered on October 19, 2018, and this appeal followed.

Petitioner raises four assignments of error on appeal: first, the circuit court erred in denying his motion to exclude references to his behavior at the time of his arrest as it was unduly prejudicial and irrelevant; second, the court erred in denying his motion for judgment of acquittal at the close of the State's case-in-chief; third, the court erred in denying his motion for judgment of acquittal raised again following the close of all the evidence; and fourth, the court erred in denying him an alternative sentence and credit for time served.

In support of his first assignment of error, petitioner argues that evidence of his demeanor on the night of his arrest was irrelevant because he was not charged with obstruction of an officer, battery, or assault of an officer or medical personnel. He characterizes his behavior as "inquisitiveness into why he was being arrested, why he is being held at gunpoint, [and] why he is being slammed into the ground," and he claims that the behavior is not relevant to whether he was driving while intoxicated or fleeing from an officer in a motor vehicle. Therefore, he asserts that the court should have granted his motion in limine to exclude references to that behavior. Alternatively, petitioner argues that if the evidence was relevant, the court failed to perform a proper balancing under Rule 403 of the West Virginia Rules of Evidence and should have excluded the evidence as unduly prejudicial. Petitioner claims that "[b]ecause this evidence was allowed to be presented, it is clear that a proper 403 balancing test was not performed by the [t]rial [c]ourt."

We review a trial court's ruling on a motion in limine under an abuse of discretion standard. *See* Syl. Pt. 1, *McKenzie v. Carroll Int'l Corp.*, 216 W. Va. 686, 610 S.E.2d 341 (2004). Under Rule 401 of the West Virginia Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Although relevant, evidence may nevertheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the

---

[2] The parties determined that the third count of the indictment, driving while under the influence, was a lesser-included offense of fleeing from an officer while under the influence of alcohol. The jury was instructed accordingly.

[3] At trial, petitioner testified that he was not under the influence of alcohol; however, petitioner admitted to being under the influence of alcohol to the probation officer who completed his presentence investigation report after trial.

4

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." W. Va. R. Evid. 403.

Petitioner refused to perform field sobriety tests or take the Intoximeter test. Given these refusals, evidence relevant to a determination of whether petitioner was intoxicated—a fact of consequence in determining whether he was guilty of fleeing from an officer while under the influence of alcohol—necessarily came from Patrolman Sanchez following the laying of a proper foundation. Patrolman Sanchez, having undergone State Police Academy training and having made arrests for public intoxication and driving under the influence "multiple times," detailed his familiarity with intoxicated persons and the behaviors they typically display. He testified that failing to comply with verbal directives, making verbal threats, and acting belligerently are behaviors suggestive of intoxication, particularly when exhibited in conjunction with lethargic movements, red and glassy eyes, the odor of alcohol on one's breath, and "off-balance" or "off-centered" movements. As this evidence was probative of petitioner's intoxication, we find no abuse of the court's discretion in allowing this testimony.

We also find that petitioner has failed to establish that the evidence was unfairly prejudicial. Petitioner argues only that it "painted [him] in a negative light" and made him "not very likeable in the eyes of the [j]ury." He contends, in conclusory fashion, that the admission of the evidence makes it "clear that a proper 403 balancing test was not performed." That the evidence made him "not very likeable in the eyes of the [j]ury" does not amount to an unfair prejudice. "The fact that evidence is prejudicial is not grounds by itself for exclusion. It is safe to say that almost all evidence introduced by the State in a criminal trial is prejudicial in one degree or another; indeed, that is usually why it is introduced." *State v. Peacher*, 167 W. Va. 540, 574, 280 S.E.2d 559, 581 (1981). Rather, the evidence must be *unfairly* prejudicial. In light of the evidence's probative value and the trial court's "broad discretion" in balancing that value against the danger of unfair prejudice, we find that petitioner has failed to demonstrate a "clear abuse" of that discretion. *See* Syl. Pt. 8, *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014) (holding that trial court's broad discretion in performing Rule 403 balancing "will not be overturned absent a showing of clear abuse").

In petitioner's second assignment of error, he argues that the circuit court erred in denying his motion for judgment of acquittal following the State's case-in-chief. Petitioner acknowledges that "[i]f just glancing at this evidence [from Patrolman Sanchez] on paper it might seem like sufficient evidence that a [j]ury could find the [p]etitioner guilty." But he contends that "[a]t the heart of the sufficiency of this evidence is the credibility of arresting [o]fficer [Patrolman] Sanchez." Petitioner claims that Patrolman Sanchez's "crucial" testimony concerning when he activated his lights and siren evolved from "past" PCHS at petitioner's preliminary hearing, to "at" PCHS in his testimony before the grand jury, to "before" PCHS at trial. Petitioner also claims that Patrolman Sanchez testified differently as to when he first observed petitioner speeding, when he first observed that petitioner's license plate matched the information that had been reported, and how close he was able to get to petitioner after activating his lights and siren.

We apply "a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Jenner*, 236 W. Va. 406, 413, 780 S.E.2d 762,

769 (2015) (citation omitted). In addition to this general standard of review, we have also held that the function of this Court in reviewing sufficiency of the evidence claims

> is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id.*, syl. pt. 2, in part (citing syl. pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). And

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

*Jenner*, syl. pt. 3.

Petitioner does not dispute that the evidence on any essential element of the crimes of which he was convicted was sufficient. Indeed, he admits that "on paper it might seem like sufficient evidence" for a jury to find guilt beyond a reasonable doubt. Rather, he argues that Patrolman Sanchez's credibility is "[a]t the heart of" his claim. Petitioner admits to "highlight[ing] and point[ing] out [inconsistencies in the officer's testimony] for the jury," but he claims that the officer was "effectively impeached." It is well established that such "[c]redibility determinations are for a jury and not an appellate court." *Id.* Further, this Court "must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Id.* Accordingly, because petitioner has challenged only the credibility determinations made, which is a determination exclusively within the jury's province, he has failed to establish that the circuit court erred in denying his motion for judgment of acquittal at the close of the State's case-in-chief.

Petitioner, again, seeks to have this Court usurp the jury's function in his third assignment of error, which is that the circuit court erred in denying his renewed motion for judgment of acquittal made at the close of all the evidence. Petitioner claims that "after having heard the [p]etitioner testify and explain the events surrounding the night in question," the court should have granted his motion for judgment of acquittal. Petitioner states that he "testified competently and offered reasonable explanations" for Patrolman Sanchez's observations and asserts that he was not

"discredited on cross examination." We find no error in the circuit court's denial of petitioner's renewed motion for judgment of acquittal, as petitioner again bases this claim on the resolution of credibility determinations. "[T]he jury, as the finders of fact, have the responsibility of weighing the evidence and the credibility of the witnesses and resolving these inconsistencies within the framework of the instructions given to them by the court." *State v. Houston*, 197 W. Va. 215, 230, 475 S.E.2d 307, 322 (1996) (citation omitted).

Lastly, petitioner argues that the circuit court erred in denying him an alternative sentence. Petitioner does not argue that the sentencing order violates statutory or constitutional commands, but he "does believe[] that the denial of alternative sentencing is disproportionate based upon the facts of the case and [his] limited criminal history."[4] Petitioner also argues that he should have been awarded credit for 110 days served in jail between March 8, 2018, and June 25, 2018.

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). "Probation is a matter of grace and not a matter of right." Syl. Pt. 1, *State v. Rose*, 156 W. Va. 342, 192 S.E.2d 884 (1972). Likewise, a circuit court retains discretion in ordering home confinement: "As a condition of probation or bail or as an alternative sentence to another form of incarceration for any criminal violation of this code over which a circuit court has jurisdiction, a circuit court *may* order an offender confined to the offender's home for a period of home incarceration." W. Va. Code § 62-11B-4(a), in relevant part (emphasis added). The court here found that petitioner would be an inappropriate candidate for alternative sentencing because he "has a prior conviction for fleeing," "has shown he is unable to follow the terms and conditions of probation by violating them on multiple occasions," and created a "substantial danger to the public" in fleeing from law enforcement. In light of these findings, we find no abuse of discretion in the court's refusal to grant an alternative sentence.

To the extent petitioner suggests that his sentences are disproportionate, we note that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Petitioner's sentences are within statutory limits, and he does not argue that they were based on an impermissible factor. Accordingly, they are not subject to appellate review.

Finally, in arguing for additional credit for time served, petitioner states that "he was technically incarcerated on both a probation revocation and the current case at the same time" and "concedes that the [t]rial [c]ourt did have the authority to determine how his incarceration time would be allocated between the two cases." In other words, petitioner concedes that the court did not err in declining to award him credit for time served for an unrelated charge, and we find no

---

[4] At his sentencing hearing, petitioner argued for "some combination of probation or home confinement."

error. *See State v. Wears*, 222 W. Va. 439, 665 S.E.2d 273 (2008) (finding no error in the denial of credit for time served where the time was served for an unrelated charge).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 3, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison