STATE OF WEST VIRGINIA

*v.*

WILLIAM BERNARD HACKER

(No. 13465)

Decided November 19, 1974.

*Clyde M. See, Jr., James E. Ansel* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *E. Leslie Hoffman, III, Betty L. Caplan*, Assistant Attorneys General, for defendant in error.

NEELY, JUSTICE:

This Court granted this appeal to determine the validity of a warrantless search under the Fourth Amendment to the *Constitution of the United States* as applied to the states by the Fourteenth Amendment. As the Court finds that the prosecution failed to demonstrate by a preponderance of evidence that voluntary consent was obtained for the search the judgment of the Circuit Court of Pendleton County is reversed and the case is remanded for a new trial.[1]

Defendant, William Bernard Hacker, was indicted on February 18, 1971 in the Circuit Court of Pendleton County and was convicted on March 23, 1971 of murder in the first degree. The evidence at the trial indicated that on December 21, 1970 the defendant left his home

---

[1] This Court has also considered the defendant's other assignments of error, namely that:

(1) the verdict is contrary to the law and the evidence; (2) the court erred in failing to grant defendant's motion for a directed verdict; (3) the court erred in failing to sustain defendant's motion to dismiss for lack of venue; (4) the court erred in failing to sustain defendant's motion to exclude photographs of the decedent's body and severed head; (5) the court erred in failing to sustain defendant's motion for a mistrial for improper conduct by the prosecuting attorney; (6) the court erred in granting certain of the state's instructions and in refusing to grant, certain of the defendant's instructions; and, (7) the court erred in resentencing the defendant. The Court finds these assignments of error to be without sufficient merit to warrant discussion.

in Baltimore, Maryland to visit in Moundsville, West Virginia, where he arrived on the morning of December 22, 1970. The next day defendant called one Betty Snyder, a long-standing friend, who had been spending time with one Herbert Corbin. Mr. Corbin answered Mrs. Snyder's telephone and invited the defendant to the Snyder home. There all three began to drink intoxicating beverages and later proceeded to a bar in Moundsville. About midnight, the defendant and Mr. Corbin took Mrs. Snyder home, but the two men went to another bar to play pool and drink more liquor. They left the second club when it closed, drove around Moundsville for a time and then left together for Petersburg, in Grant County, West Virginia, arriving there in the early morning of December 24, 1970.

It appears from the evidence that Mr. Corbin was shot and killed in the Petersburg area of West Virginia on December 24, 1970. His body was discovered on a farm located on the Grant-Pendleton County line. At the trial defendant admitted shooting the decedent; however, the evidence is in conflict regarding the circumstances surrounding the shooting. The defendant maintained that the two men fought over a gun in the front seat of the car and the gun accidentally discharged.

The defendant returned to his home in Baltimore, Maryland on Friday morning, December 25, 1970. At approximately 11:00 a.m. on that day defendant was taken into custody by Maryland and West Virginia authorities pursuant to a homicide warrant.

The issue on this appeal concerns the propriety of a search of the defendant's room in Baltimore, Maryland.[2]

It appears from the evidence that defendant lived at the residence of a Mrs. Novak in Baltimore. The evi-

---

[2] As the allegedly invalid search was conducted in the State of Maryland, petitioner is not protected by *W. Va. Const.* Art. 3, Sect. 6, and as petitioner did not assert any rights under the *Constitution of the State of Maryland,* and as such rights are unnecessary to sustain petitioner's claim, the Court does not consider the applicability of the Maryland law.

dence is silent concerning the relationship between Mrs. Novak and the defendant and with regard to whether Mrs. Novak operated a rooming house, rented a room to the defendant, or merely allowed the defendant to live in the house free of charge.[3]

---

[3] Total testimony in this regard introduced by the State was given by a State Policeman, Corporal Humphrey as follows:

Q. Did Mr. Hacker tell you where he had been living?
A. Yes, sir.
Q. And did you go out to where he had been living?
A. We went out on December 27, 1970.
Q. When you say "we" who went with you?
A. Sgt. R. L. Mozingo; Trooper J. R. Rogers from Morgantown and myself—all three West Virginia State Policemen—Lt. Lewis G. Roomer, Baltimore County Police and Detective James C. Hyson of Baltimore County Police.
Q. All of you did what now?
A. We went out to Mrs. Novak's residence where we talked with her and interviewed her at which time she gave us permission to search her dwelling.
Q. Did you make a search of her dwelling?
A. Yes, we made a brief search of her dwelling.
Q. Now I would like for you to state what, if anything, you found in her residence?
A. Mrs. Novak gave us a pair of shoes, size seven, identified as belonging to Mr. William Bernard Hacker. She gave us one man's new shirt which was brought there when he returned. She gave us one man's charcoal topcoat; one man's brown dress hat and one man's gray dress hat. Those were the items secured at that time.
Q. Did you go back later to search the home than [sic]?
A. Yes sir, we went back later.
Q. Did you find anything on the second occasion?
A. That was on December 29, 1970; Lt. Roomer, Detective Hyson, Trooper Rogers from Morgantown State Police and myself went December 29th to her residence where we again interviewed and talked with her and searched her residence.
Q. What did you find on this occasion, if anything?
A. After she signed the consent for us to search we found a pistol in a upstairs bedroom at the head of the stairway under a pillow on his bed.
Q. On whose bed?
A. On William Bernard Hacker's bed. She pointed out that it was the bed he used.

The search in question occurred in two phases, two and four days after the defendant was arrested. On each occasion, the police first interviewed Mrs. Novak and each time she gave the police permission to search the premises. On the second occasion, a gun, the alleged murder weapon, was found under the pillow on the bed that Mrs. Novak identified as the one in which the defendant slept.

The defendant made a timely motion during trial to exclude the revolver from evidence as fruit of an illegal warrantless search. Under the recent case of *United States v. Matlock,* U.S., 39 L. Ed. 2d 242, S. Ct. (1974), a valid search may be conducted without a warrant if consent to search is given by a person who possesses common authority over premises as against an absent,

---

Cross Examination by defendent's counsel:

Q. Corporal, now when you went to Baltimore you did not obtain a search warrant to search Mrs. Novak's home, did you?

A. You wouldn't obtain a search warrant to search a residence in Maryland in West Virginia.

Q. You didn't have a Maryland search warrant either, did you?

A. We had consent.

Q. The search warrant applies to all states.

A. We had consent.

Q. You didn't obtain a search warrant to search that home, did you?

A. Mrs. Novak gave us her consent to search.

Q. Did Mrs. Novak give you her consent to search the room of this Defendant?

Mr. Sponaugle: That calls for a legal conclusion, Your Honor, and the Corporal is not qualified.

---

The defendant made only the following statements with regard to his living arrangements.

Q. Who is Mrs. Novak?

A. She is a friend of mine and I have known her ever since she was a child. I have stayed with her in Baltimore and helped her run her properties down there.

Q. How did you first get acquainted with Mrs. Novak?

A. Well, I got acquainted with her when her brother and I worked together in mine rescue.

non-consenting person with whom that authority is shared. *See also, Frazier v. Cupp*, 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420 (1969).

It was incumbent upon the State to prove by a preponderance of evidence, that at the time of the search, the consenting third party, Mrs. Novak, was a joint occupant of the premises with common authority over the specific bedroom from which the pistol was taken. As the Supreme Court said in *Matlock, supra*:

> "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States*, 365 U.S. 610 (1961) (landlord could not validly consent to the search of a house he had rented to another); *Stoner v. California*, 376 U.S. 483 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

Having conducted a warrantless search, the burden rested upon the State to demonstrate the legality of that search. While the search of the house in the case at bar may have been valid had Mrs. Novak possessed common authority with the defendant over the defendant's living quarters, the State failed to prove the existence of common authority and, therefore, the legality of Mrs. Novak's consent remains in question. The State failed to sustain its burden, and accordingly the judgment of the Circuit Court of Pendleton County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*