294 S.E.2d 461

**STATE of West Virginia**

v.

**James W. RISER, Jr.**

**No. 14768.**

Supreme Court of Appeals of
West Virginia.

July 15, 1982.

---

Preiser & Wilson, John W. Swisher and Franklin S. Fragale, Jr., Charleston, for plaintiff in error.

Chauncey H. Browning, Jr., Atty. Gen. and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for defendant in error.

PER CURIAM:

The appellant, James W. Riser, Jr., after a change of venue, was convicted of first degree murder in the Circuit Court of Greenbrier County in September, 1977 and the jury recommended mercy. The appellant assigns the following errors on appeal: (1) he was denied due process because the private prosecutor had a financial interest in the outcome of the case; (2) the State obtained his shirt and pants as a result of an illegal seizure; (3) evidence of his remarks to a police officer was admitted without an *in camera* hearing to determine the voluntariness of those remarks; (4) evidence of his remarks to a bystander was admitted without first determining the voluntariness of those remarks at an *in camera* hearing; (5) the verdict of first degree murder is not supported by the evidence; (6) he was prejudiced by ineffective assistance of counsel, and (7) State's Instruction No. 3, given over objection, erroneously equated premeditation and deliberation with an intent to kill.

The uncontroverted facts reveal that the decedent, Sharon Shanklin, was shot and killed at her home in Summers County on December 26, 1976, seconds after the appellant arrived at her trailer. The appellant was found lying beside the decedent, severely wounded. The murder weapon, the appellant's revolver, was found lying beside him.

A number of witnesses who lived near the decedent testified. Though none of

these witnesses saw the shooting occur, several heard gunshots and immediately began looking to see what had happened. One of the witnesses was standing on the front porch with the decedent when the appellant drove up in his police cruiser. As the appellant stepped up on the porch, she stepped off and started walking to her car parked nearby. Before she could reach the car, she heard what sounded like two firecrackers. After a brief pause, she heard a third loud noise, turned around and walked back toward the trailer and saw the appellant and decedent lying on the porch. Another neighbor testified to hearing what she thought were three firecrackers explode. She looked out her picture window after hearing the third shot and saw the appellant standing with his arms over his head and then he slumped over. There was other testimony to this same effect. The facts will be more fully developed as necessary to the discussion of the issues.

After the jury returned its verdict, the appellant retained new counsel who then filed a motion to set aside the verdict and grant a new trial. The motion was denied after a hearing and appellant was sentenced.

## I.

The appellant's first assignment of error involves a private prosecutor retained by the decedent's relatives.

David Knight, the Mercer County Prosecuting Attorney, was retained by relatives of the decedent prior to trial to aid the regular prosecuting attorney in prosecuting the appellant. At approximately the same time, Knight and his associate in private practice entered into an agreement with the decedent's relatives to bring a civil action against the appellant. The appellant contends here that the retention of Knight

and his associate to bring a civil suit against him created the appearance of impropriety and denied him due process of law because it gave the private prosecutor a financial interest in the outcome of the criminal case.

A private prosecutor, by reason of the fact that he is usually retained by members of the victim's family solely for the purpose of assisting in prosecuting a defendant, obviously has an interest in the outcome of the lawsuit. In *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), however, this Court declined to abolish the common law private prosecutor system, recognizing there were sound policy reasons for its retention.[1]

We also recognized in Syllabus Point 1 of *Atkins* that the right to have a private prosecutor is not absolute and that he is subject to the same high standards as the regular prosecuting attorney:

"The right to obtain a private prosecutor in this State is not absolute and is subject to judicial control and review. A private prosecutor is subject to the same high standards of conduct in the trial of the case as is the public prosecutor."

This requirement on the part of a private prosecutor of being subjected to the same high standards of conduct in the trial of a case as a public prosecutor was found in *Atkins* to blunt the usual criticism that a private prosecutor would be overzealous to convict. 163 W.Va. at 505–506, 261 S.E.2d at 58.

We are cited several cases [2] including our own *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978), where in an original prohibition, we held that a lawyer who had previous contact with the accused relative to defending him on a crimi-

---

**1.** *Atkins, supra,* gave these reasons:

"There are several positive reasons for retaining the right to employ a private prosecutor. First, we recognize that there may be occasions when the public prosecutor is in need of assistance in order to carry out his duties effectively. Second, there may be those occasions when the employment of a private prosecutor would satisfy the public's concern that a given case not be accorded

perfunctory treatment. Finally, it is not inappropriate to consider that in certain cases, the victim's family may wish to satisfy itself that the case is being vigorously prosecuted." 261 S.E.2d at 58 (Footnote omitted)

**2.** *E.g., Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967); *Sinclair v. Maryland*, 278 Md. 243, 363 A.2d 468 (1976).

nal charge could not act as a private prosecutor on the same criminal charge. *Cf. State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974). The appellant argues that the private prosecutor should have been disqualified because it was developed after the trial had commenced that his law partner and he had been retained to file a civil action against the appellant on behalf of the decedent's heirs for recovery of damages for her wrongful death. We believe there is a considerable distinction between the propriety of a private prosecutor acting against a man with whom he had previously spoken about defending him; and the propriety of allowing a private prosecutor to act in a criminal case and also in a civil case against a defendant.

We decline to find this to be reversible error under the facts of this case because no timely objection was made on this point. An initial general objection was made at the beginning of the trial to the utilization of the private prosecutor. The court heard the matter in chambers and defense counsel's only point was that the private prosecutor had been retained by relatives of the decedent to assist in the prosecution. The court overruled this objection.

On the following day while the court was still hearing motions in chambers, the question arose as to the defense attorney's right to cross-examine several of the decedent's relatives who were prosecution witnesses in regard to their financial interest in the case by way of hiring the private prosecutor. During a discussion on this subject, in chambers, the defense developed that the private prosecutor's partner had contemplated filing a civil action against the appellant for wrongful death of the decedent. At this time no objection was made or renewed to the court as to disqualifying the private prosecutor.[3] We believe that *Atkins* permits a challenge to

be made to a private prosecutor and a right on the part of defense counsel to have the private prosecutor disclose his financial arrangements; however, the ultimate determination of the propriety of the private prosecutor lies with the trial court. Where, as here, defense counsel does not make specific objections, in the absence of unusual circumstances, he may not overturn the jury verdict on the basis of the utilization of a private prosecutor.

The appellant does not point to any specific impropriety on the part of the private prosecutor except the fact that he had a pecuniary relationship with the decedent's family. We do not believe that this fact alone creates any reversible error.

## II.

The appellant's second assignment of error is that the trial court erred in overruling his motion to suppress the introduction of certain items of his clothing because they were seized in violation of Section 6 of Article III of the West Virginia Constitution and the Fourth Amendment to the United States Constitution.

The clothes appellant was wearing at the time of the shooting were removed at the emergency room of the hospital where he was taken for treatment of the gunshot wound. The clothes were given to his wife, who had them placed in the trunk of his car. Appellant's clothes were subsequently removed from the trunk of the car by his cousin and given to a State Police officer.

The testimony given at the *in camera* suppression hearing was conflicting as to whether a police officer ordered appellant's cousin to bring the clothes to him or whether they were voluntarily brought forth on his own initiative. The appellant's sister and cousin stated that they were standing in the hospital when a police officer ascertained that the cousin knew where the

---

**3.** It was also during this hearing that an assistant prosecutor from Mercer County, a Mr. Ambrose, was introduced and given permission to help the private prosecutor. No objection was made by defense counsel to this action. However, new defense counsel in post-trial motions challenged the court's acceptance of Mr. Amb-

rose as an assistant to the private prosecutor because his wife was a lawyer who was associated with defense counsel's firm. She did not participate in the trial. We decline to find this reversible error as it was an obvious fact known to defense counsel who failed to make any objection on this ground to the trial court.

clothes were and ordered him to bring them in from the car. The officer, on the other hand, stated that he did not order or direct anyone to bring him the appellant's clothes and that he was looking around the hospital for these items when a man who identified himself, as best he could recall, as the appellant's uncle came forth and gave him the clothes.

■■■ If the clothes were seized from the car by a private citizen and handed over to the police officer, no constitutional question would arise. The Constitution does not prohibit searches and seizures by private citizens. *E.g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Crabtree*, 545 F.2d 884 (4th Cir. 1976); *Sutherland v. Kroger Company*, 144 W.Va. 673, 110 S.E.2d 716 (1959). If, however, a police officer commanded or directed a private citizen to retrieve the appellant's clothes through coercion, domination, or the more subtle techniques of suggestion available to such officials, the Constitution would come into play. *Coolidge, supra.* "The test ... is whether, in light of all the circumstances of the case, [the private citizen] must be regarded as having acted as an 'instrument' or agent of the state ...." *Id.* 403 U.S. at 487, 91 S.Ct. at 2049, 29 L.Ed.2d at 595.

■■■ The trial court resolved the question of whether appellant's cousin had become an agent for the State on the factual ground that the officer did not command or order him to remove the clothes from the car. This factual determination involving the credibility of the witnesses is much like the credibility issue in regard to the voluntariness of a confession. In Syllabus Point 1 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), we held that the State had to prove the voluntariness by a preponderance of the evidence. In Syllabus Point 3, in part, of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), we confirmed

this point and also said that a trial court's decision on this matter would not be disturbed "unless it is plainly wrong or clearly against the weight of the evidence." We have recognized the preponderance rule in regard to proving the legality of a seizure of evidence in the single Syllabus of *State v. Hacker*, 158 W.Va. 182, 209 S.E.2d 569 (1974):

> "Where the defendant in a criminal case makes a timely objection to the introduction of evidence seized during a warrantless search, it is incumbent upon the state to prove by a preponderance of evidence that the search was legal."

■■■ We do not find that the trial court's ruling on the seizure question to be plainly wrong or clearly against the weight of the evidence.

### III. & IV.

While the appellant was lying wounded on the decedent's porch he told a bystander that "I've killed her. Get the gun and shoot me." Later, while being transported to the hospital, the appellant stated to an accompanying officer named McDowell that he was sorry and that he did not mean to kill the girl. Both statements were used against the appellant at trial.

■■■ In his third and fourth assignments of error, consolidated here for discussion, the appellant contends that the lower court committed reversible error when it admitted testimony at trial concerning these remarks without determining their voluntariness at an *in camera* hearing. We disagree. First, the record indicates that the trial court at the *in camera* hearing did rule on the statements based upon the facts as given to him by both the prosecution and defense counsel.[4] Moreover, there was an additional *in camera* hearing as to Officer McDowell's statement where the court decided that it was admissible as a spontaneous utterance. Our rule is set out in Syllabus Point 1 of *State v.*

---

4. The court's comment on this was:

"I think that will be the Court's ruling, Mr. Holroyd. Anything, any confession or any adverse statement that was made by the defendant to the investigating officer, without his rights being established and the Miranda Rulings being complied with, will be excluded, but statements made to bystanders, I don't think we have that obligation and I will not exclude those."

*Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976), as follows:

"A spontaneous statement by a defendant made prior to any action by a police officer or before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing."

*See also State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981); *Wilhelm v. Whyte*, 161 W.Va. 67, 239 S.E.2d 735 (1977).

We believe that the trial court's assessment that both statements were made spontaneously was supported by the evidence.

### V.

As his fifth assignment of error, the appellant contends that the verdict of guilty of first degree murder is not supported by the evidence. We disagree.

The question here is whether there was sufficient evidence presented at trial from which a jury could reasonably conclude that the State had proven every element of the crime beyond a reasonable doubt.

Our rule with respect to a claim that the verdict is not supported by the evidence is set forth in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), as follows:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

In the case at hand, testimony adduced in the lower court indicates that the decedent had informed the appellant the night before the shooting that she desired to break off their extramarital love affair. Additional testimony shows that this upset the appellant to the point that the decedent feared for her personal safety. Furthermore, the appellant's arrival at the decedent's trailer was followed by his shooting the decedent within a relatively short period of time. There was no evidence that the decedent did anything to precipitate the shooting. Given all the circumstances, the evidence was sufficient to support a finding of first degree murder.

### VI.

The appellant also contends that he was denied effective assistance of counsel because, among other things, his trial counsel presented a defense not supported by the facts, conducted a limited cross-examination of the State's witnesses and failed to contest the admissibility of statements the appellant made to bystanders while he was wounded.

Several of the allegations of ineffective assistance of counsel relate to the tactics used by his counsel including their decision to limit cross-examination and to pursue a defense based on the possible presence of a third-party assailant. With respect to such claims, our law was set forth in Syllabus Point 21 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), as follows:

"Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

The decision to limit cross-examination is often wise when the adverse witness' testimony is harmful and cannot be effectively broached. Also, the positioning of the gunshot holes in the appellant's shirt did not preclude a defense based on a third-party assailant. The fact is that defense counsel was confronted with a substantial case of murder with little facts which would offer extenuating circumstances much less a rec-

ognized defense to the killing. Given these circumstances, we can say that a reasonably qualified attorney would have so acted in the defense of the accused.

■ We have reviewed the other claims of ineffective assistance of counsel and find them to be without merit as we believe from a review of the entire record that trial counsel met the test set in Syllabus Point 19, in part, of *State v. Thomas, supra*:

> "In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law ...."

## VII.

■ The appellant's final contention that State's Instruction No. 3 erroneously equated premeditation and deliberation with intent to kill is without merit. The instruction states, in substance, that it is not necessary in order to constitute first degree murder that the intent to kill exist for any particular length of time prior to the actual killing. This instruction was approved as a correct statement of the law in Syllabus Point 4 of *State v. Schrader*, W.Va., 288 S.E.2d 170 (1982), which states:

> "When the West Virginia Legislature adopted Virginia's murder statute in 1868, the law was settled that in order to constitute a 'premeditated' murder an intent to kill need exist only for an instant."

Furthermore, the trial court gave State's Instruction No. 1 and Defendant's Instruction No. 5 which explained the difference between first and second degree murder. This case is thus similar to *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), where, in affirming a first degree murder

5. In note 7 of *Hatfield*, we suggested a more appropriate instruction on first degree murder, paraphrasing an instruction used in federal

conviction, this Court found the instructions when read as a whole "clearly delineated the critical difference between first and second degree murder ...." *Id.*, 169 W.Va. at 203, 286 S.E.2d at 410.[5]

The appellant's contentions on appeal are without merit. Accordingly, the judgment of the Circuit Court of Greenbrier County is affirmed.

Affirmed.

court. 2 Devitt & Blackmar, *Federal Jury Practice and Instructions* § 41.03, at 214 (1977).