# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0702**  (Kanawha County 14-F-392)

**Juan M.**
**Defendant Below, Petitioner**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Juan M., by counsel Andrew Shumate, appeals the Circuit Court of Kanawha County's July 20, 2016, amended sentencing order following his convictions for nineteen counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust.[1] Respondent the State of West Virginia, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order. Petitioner also submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

J.S. was fifteen years old when her father, petitioner, allegedly sexually violated her by coming into her room at night and forcing her to perform oral sex upon him. This continued almost daily for over one year. Petitioner would ejaculate on the floor near the hallway or in J.S.'s hand but would use a towel to try to clean the carpet. After approximately a year, petitioner would also force J.S. to strip naked and rub her vagina on his penis. He unsuccessfully attempted to penetrate her vagina and anus. J.S. eventually confided in her boyfriend, D.R., that she was being abused, and police were notified. Petitioner was indicted on twenty counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust under West Virginia Code § 61-8D-5.

Maureen Runyon, a forensic interviewer, conducted a recorded interview with J.S. During the interview, J.S. discussed the alleged sexual acts with Ms. Runyon, clearly identifying

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

her father as the perpetrator and describing moles on petitioner's penis to Ms. Runyon. Prior to trial, petitioner filed a motion to suppress evidence relating to the interview on the ground that the State failed to preserve a diagram of a male body Ms. Runyon used during the interview, which was not marked upon or retained. The circuit court denied that motion.

The police also interviewed petitioner during their investigation. They received consent to search the home when petitioner stated it did not matter where they checked in the house. During that search, police found semen stains in the area where J.S. testified that petitioner would ejaculate – in the hallway just outside of her room. Testing identified the sperm and related biological materials as matching petitioner's DNA. Petitioner subsequently submitted a motion to suppress evidence of that DNA material on the carpet, asserting that he did not give police permission to search the hallway of his home. The circuit court denied that motion.

During the course of the trial, petitioner's trial counsel from the Kanawha County Public Defender's Office, Sara Whittaker and Ronnie Sheets, became aware that their office also represented one of the trial witnesses, D.R., on unrelated charges. As a result, D.R. was appointed new counsel who was not affiliated with the Public Defender's Office.

Petitioner was found guilty of nineteen counts of the felony offense of sexual abuse by a parent, guardian, custodian, or person in position of trust following a jury trial. The circuit court convicted him of the same by order entered March 24, 2016. Pursuant to the amended sentencing order entered July 20, 2016, petitioner was sentenced to the following terms of incarceration: a) for counts one through seven, an indeterminate term of not less than ten nor more than twenty years, said sentences to run concurrently to each other; b) for counts eight, ten, eleven, and twelve, an indeterminate term of not less than ten nor more than twenty years, said sentences to run concurrently to each other but consecutively to the sentences for counts one through seven; c) for counts thirteen through sixteen, an indeterminate term of not less than ten nor more than twenty years, said sentences to run concurrently to each other but consecutively to the sentences imposed in counts one through seven and eight, ten, eleven, and twelve; and d) for counts seventeen through twenty, an indeterminate term of not less than ten nor more than twenty years, said sentences to run concurrently to each other but consecutively to the sentences imposed in counts one through seven, eight, ten, eleven, twelve, and thirteen through sixteen. In addition to the effective sentence of forty to eighty years of incarceration, petitioner was ordered to serve ten years of extended supervision, pursuant to West Virginia Code § 62-12-26, following the expiration of the sentences of incarceration and ordered to register as a sexual offender for life. However, the circuit court stayed the execution of the sentence pursuant to West Virginia Code § 62-7-1. Petitioner appeals his convictions.

On appeal, petitioner asserts four assignments of error with differing standards of review. First, petitioner argues that the circuit court erred in refusing to declare a mistrial after discovering that petitioner's attorneys had a conflict of interest. He contends that another client of the Kanawha County Public Defender's office, D.R., appeared as a witness for the State at trial, so petitioner's counsel was unable to properly attack D.R.'s credibility as a witness. He asserts that he was not asked to waive the conflict. He contends that this was an actual conflict so he was not required to show prejudice in order to sustain his claim of ineffective assistance of counsel. Petitioner asserts that Rule 1.7(a)(2) of the West Virginia Rules of Professional Conduct

2

supports his contention that the apparent concurrent conflict of interest existed because there was a significant risk that the representation of one or more clients would be materially limited by the lawyers' responsibilities to D.R.[2]

We note that we have repeatedly held as follows:

> It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett,* 187 W .Va. 760, 421 S.E.2d 511 (1992). This Court does not have a sufficient record to determine whether petitioner received ineffective assistance of counsel at trial. However, to the extent petitioner asserts that his counsel had a conflict of interest, such contention is negated by the record currently before this Court. A review of the record reveals that it was the prosecutor's office that brought the potential conflict issue to the attention of the circuit court and petitioner's counsel. Based on petitioner's counsels' discussion with the circuit court, the circuit court concluded that petitioner's counsel was unaware that the public defender's office may have been representing D.R. at the time of petitioner's trial. Petitioner's trial counsel explained that they had no idea the public defender's office had been appointed to represent D.R.; they had no contact with D.R. regarding his misdemeanor case; and they had not had any contact with the attorney who had been appointed to handle D.R.'s case. They were also unsure whether the public defender's office actually represented D.R. at that time. Based on that information, the circuit court appointed a private attorney to handle D.R.'s misdemeanor charge and prohibited petitioner's counsel from communicating with the attorneys involved in D.R.'s representation. Therefore, it is apparent from the record on appeal that the circuit court averted any potential for conflict involving petitioner's trial counsel, petitioner, and D.R.

Petitioner next argues that law enforcement violated his Fourth Amendment rights by conducting a warrantless search of his home, which resulted in the discovery of the semen stain. He contends that he consented only to a search of J.S.'s bedroom, which he asserts did not include the hallway outside of her bedroom. However, the semen stain at issue was found in the hallway using what he describes as advanced scientific equipment.

---

[2] West Virginia Rule of Professional Conduct 1.7(a)(2) provides as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Our decision in *State v. Buzzard*, 194 W. Va. 544, 461 S.E.2d 50 (1995), is particularly relevant to our consideration of petitioner's argument. As we set forth therein,

> The State has the burden of proving by a preponderance of the evidence that the consent to search was given voluntarily. *State v. Worley,* 179 W.Va. 403, 410, 369 S.E.2d 706, 713, *cert. denied,* 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988) (citing *State v. Hacker,* 158 W.Va. 182, 209 S.E.2d 569 (1974)). "'Whether a consent to a search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' Syllabus Point 8, *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980)." Syl.Pt. 4, *Worley,* 179 W.Va. at 406, 369 S.E.2d at 709. However, in making a factual assessment concerning the existence of voluntary consent, the inquiry focuses upon whether the facts available to the officer at the moment of entry "''warrant a man of reasonable caution in the belief''" 'that the party had voluntarily authorized the officer's entry onto the premises. *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) (quoting *Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-81, 20 L.Ed.2d 889 (1968)). Finally, we review a trial court's legal conclusions regarding suppression determinations de novo, and the factual determinations involving those legal conclusions are reviewed under the clearly erroneous standard. *State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994) (citing *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994) and *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994)).

*Buzzard* at 550, 461 S.E.2d at 56. In addition, in *Buzzard*, we set forth the following rule:

> "The general rule is that the voluntary consent of a person who owns or controls premises to a search of such premises is sufficient to authorize such search without a search warrant, and that a search of such premises, without a warrant, when consented to, does not violate the constitutional prohibition against unreasonable searches and seizures." Syl. Pt. 8, *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds by State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914 (1981).

Syl. Pt. 1, *Buzzard*. Petitioner does not contend that he was under duress or was coerced into giving consent. Therefore, he does not contest the voluntariness of the search and appears to take issue only with the extent of his voluntary consent. Petitioner's consent to the search was recorded by law enforcement, and it reveals that petitioner specifically stated "it don't [sic] matter where you check at in the house, you know. . . ." Officers understood that to be consent to search anywhere inside the residence. Petitioner does not dispute making that statement, and he did not challenge the authenticity of that recording. Therefore, we find that based on the specific facts of this case, petitioner's Fourth Amendment rights were not violated by law enforcement's search of the hallway outside J.S.'s room following petitioner's consent to the search.

Petitioner's third assignment of error is that the testimony regarding the location of moles on his penis should have been excluded pursuant to *State v. Osakalumi*, 194 W. Va. 758, 461

S.E.2d 504 (1995). It is undisputed that during J.S.'s interview with Ms. Runyon, J.S. pointed to a diagram to indicate the location and number of moles on petitioner's body. However, that diagram was not preserved. While that interview was recorded on video, petitioner asserts that the positioning of the camera and poor video quality make it impossible to tell where J.S. was pointing on that diagram. Petitioner, therefore, argues that he was prejudiced by the State's failure to disclose the diagram.

> When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

Syl. Pt. 2, *Osakalumi*. As the circuit court found in the instant matter, the record establishes that Ms. Runyon used a blank diagram of a male's body during her conversation but the diagram was not preserved because it remained blank. Even if the recording of the interview was insufficient to determine where J.S. was pointing, but petitioner's complaint related solely to the blank diagram. The State made an identical blank diagram available to petitioner. Therefore, we find that the State did not have a duty to preserve the blank diagram used during the interview with J.S. and that there was no violation of our holding in *Osakalumi* caused by the State's failure to preserve and present the original blank diagram to petitioner.

Finally, petitioner argues that his conviction should be overturned due to a lack of evidence. Without citing a single case, statute, rule, or the record on appeal, petitioner argues that his case clearly fell below the standard required to reach a criminal conviction, pointing to the fact that the only evidence presented at trial was the testimony of J.S. and the DNA evidence from the carpet in the hallway. He also criticizes J.S.'s credibility based upon her "conflicting stories" and "subsequent legal issues," which he fails to identify.

Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, in pertinent part, a petitioner's

> brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not

adequately supported by specific references to the record on appeal.

Petitioner failed to include a single citation to any authority or any reference to the record before this Court to support this assignment of error. Therefore, we decline to address the merits of this alleged error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  May 19, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker