# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0378** (Morgan County CC-33-2020-F-24)

**Raymond William Miller,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Raymond William Miller, by counsel B. Craig Mansford, appeals his convictions in the Circuit Court of Morgan County for fleeing from law enforcement while under the influence; fleeing with reckless disregard for the safety of others; driving revoked for DUI third offense; passing in a no passing zone; speeding; and fleeing on foot. Petitioner also appeals the denial of his post-trial motions for a new trial and judgment of acquittal as to fleeing with reckless disregard for the safety of others. Respondent the State of West Virginia, by counsel Patrick Morrisey and Scott E. Johnson, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 17, 2020, Deputy Dennis Jenkins of the Morgan County Sheriff's Department responded to a Sheetz store due to a report of petitioner driving without a license. As the officer pulled into the parking lot, he observed petitioner pulling out of the parking lot in an orange Ford F350 truck. Dep. Jenkins positively identified petitioner and knew that petitioner did not possess a driver's license. Once on the road, the officer activated his lights, but petitioner refused to stop. During the ensuing pursuit, Dep. Jenkins observed petitioner's vehicle weaving, drifting, straddling the lane line, almost striking an object or other vehicle, rapid acceleration and deceleration, traveling ten miles in excess of the speed limit, driving in the opposite lane, and following too closely, in addition to other cues that petitioner was driving under the influence. Eventually, another police vehicle struck petitioner's truck, forcing him to stop, and petitioner fled on foot.

Dep. Jenkins was present when petitioner was apprehended. When Dep. Jenkins

1

handcuffed petitioner, he detected a "strong odor of alcoholic beverage emitting from [petitioner]." He also observed that petitioner's speech was slurred. Dep. Jenkins searched the cabin of petitioner's truck and found a half-full gallon bottle of spiced rum and a full bottle of "Johnny Bootlegger" of an unknown size. He also found a case of beer in the back of the truck. While transporting petitioner to the hospital, Dep. Jenkins asked petitioner if he would consent to a blood draw. Dep. Jenkins admitted that petitioner refused but further replied, "I'm drunk. I'm drunk. I'm already drunk. I ran you, that's what I did." They arrived at the hospital at 7:11 p.m. Once in the emergency room, Dep. Jenkins again asked petitioner if he would submit to a blood draw, and petitioner consented. Dep. Jenkins asked the hospital staff to conduct a blood draw from petitioner, but he was informed that they had already conducted a toxicology test. The nurse who performed the blood draw, Jay Hollyfield, later testified that when petitioner arrived at the hospital, he was "slurring his words and smelling of alcohol[.]" The nurse performed the blood draw at 7:55 p.m. for medical purposes, though the nurse knew that petitioner was in police custody. The result was a blood alcohol concentration of 214 milligrams per deciliter; according to the State's expert toxicology witness, that translates to a blood alcohol content of .184.

Petitioner was indicted by a grand jury in June of 2020 for fleeing from law enforcement while under the influence; fleeing with reckless disregard for the safety of others; driving revoked for DUI third offense; passing in a no passing zone; speeding; and fleeing on foot. The circuit court severed the driving revoked count prior to trial. Also prior to trial, petitioner filed a motion in limine or alternatively a motion to suppress the blood draw evidence, requesting that the court direct the State to show it could lay a proper foundation for the admission of any blood test results it wished to prove. However, the circuit court held the motion in abeyance, noting that petitioner could renew the motion at trial when the State tried to lay a foundation for the blood draw.

Petitioner's trial took place in November of 2020. During voir dire, petitioner's counsel inquired whether any of the prospective jurors were "good friends with any law enforcement?" Jury panel member H.M. did not respond. The circuit court asked the jury pool if any member had personal knowledge of the case or had discussed the case with anyone, and no potential juror responded. When they were asked if they could "eliminate and disregard everything [they] may have heard or read about this case and render an impartial verdict solely on the evidence presented during trial within th[e] courtroom[,]" again no juror responded. Finally, when they were asked by petitioner's counsel whether they had "heard anyone else discussing this case[,]" there was no response from any potential juror.  H.M. served as a juror on the case.

After the presentation of the State's case-in-chief, petitioner sought to suppress the results of the blood draw, arguing that Nurse Hollyfield acted as an agent for the State when he drew petitioner's blood and that the blood draw was an illegal seizure. When addressing that motion, the circuit court found that the draw was

> for a medical purpose . . . The fact that [the nurse] perceived the need to not use an alcohol swab because somebody else might be looking at these records, that does not make him an agent of the State. . . . I don't believe he had a duty to tell [petitioner] that information prior to collecting the blood for medical purposes. With that being said, even—I mean, all that is going to get you is the blood draw suppressed. I mean, there's still plenty of other evidence that could go to this jury

2

on the issue of under the influence based on the officer's testimony as well as the nurse's testimony of the odor of alcoholic beverage, the slurred speech on which a jury could find him to be under the influence at the time of his flight.

The court went on to note that

there was no law enforcement draw. There was only the medical draw. And the whole consent for medical purposes is consent to medical treatment. He indicated there was a consent there. I don't know how you get to state action for a suppression issue from a medical blood draw. I mean, I understand you're trying to make the argument that he's a state agent but I don't think you get there.

Following the denial of petitioner's motion to suppress the blood draw evidence, petitioner declined to testify and the defense rested without presenting any other evidence. The jury found him guilty of all counts. Thereafter, the State filed a recidivist information against petitioner, alleging that he was previously convicted of driving while revoked for DUI, third offense; robbery; and second-degree sexual assault. The State filed an amended recidivist information alleging the same predicate convictions. Petitioner entered a plea to the amended recidivist information, admitting one prior predicate felony and pleading guilty to the severed count, driving revoked for DUI third offense.

Petitioner filed a post-trial motion for a new trial and judgment of acquittal on November 30, 2020, asserting that the circuit court erred in refusing to suppress the blood test results; that Juror H.M. was untruthful during voir dire because she failed to disclose that she was acquainted with law enforcement officers and was aware of the facts of the case; and that there was insufficient evidence for the jury to convict petitioner of fleeing from law enforcement in reckless disregard for the safety of others. Petitioner also renewed all of the objections he made during trial and to the circuit court's pretrial ruling not to suppress petitioner's statement. The circuit court held a hearing on that motion on February 18, 2021, though petitioner did not subpoena Juror H.M. to appear. The circuit court denied petitioner's motion by order entered on February 24, 2021.

Petitioner was sentenced to the following terms of incarceration by order entered on April 13, 2021: (1) three to ten years for fleeing from law enforcement in a vehicle while under the influence; (2) two to five years for fleeing from law enforcement in reckless disregard for the safety of others; (3) one to three years for driving revoked for DUI third offense; and (4) one year for fleeing on foot. He was also fined for passing in a no passing zone and speeding. The sentences resulted in an aggregate penitentiary sentence of five to fifteen years.[1] As part of his sentence, it was recommended that petitioner participate in a residential substance abuse treatment program if

---

[1] Shortly before sentencing, petitioner filed a motion to continue sentencing to allow him to participate in in-patient alcoholism treatment and rehabilitation in Mercer County. After the circuit court denied that motion, petitioner filed a motion to consider a hybrid sentence, which would place petitioner on home confinement for three to ten years, after completing a penitentiary sentence of two to five years. In its April 13, 2021, sentencing order, the circuit court also denied petitioner's motion for a hybrid sentence.

available; if not, he should be considered for whatever substance abuse treatment is available.[2] Petitioner appeals from his convictions and the denial of his post-trial motion.

We review the denial of a motion for a judgment of acquittal or, in the alternative, for a new trial as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, as we reiterated in *State v. Sites*, 241 W. Va. 430, 437, 825 S.E.2d 758, 765 (2019),

> "[t]he trial court's disposition of a motion for judgment of acquittal is subject to our de novo review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt." *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996).

On appeal, petitioner first argues that the circuit court erred in allowing the State to present evidence of blood alcohol content from the blood draw performed by an agent of the State, which blood draw constituted a search for which no search warrant had been obtained nor informed consent given, violating petitioner's Fourth Amendment right against unreasonable search and seizure.[3] Petitioner contends that he clearly demonstrated that Nurse Hollyfield was acting as an

---

[2] According to a psychological evaluation report by Harold Slaughter, M.S., petitioner had an extensive history of alcohol dependence that began at age 12. The report indicated that petitioner had been drinking approximately half a gallon of whiskey per day. Petitioner's DSM-5 diagnosis was "Alcohol Use Disorder, severe."

[3] We note that petitioner's arguments do not comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. That rule provides that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Continued . . .)

agent or instrumentality of the State when he drew petitioner's blood after gaining his equivocal consent "through ruse or pretense of the need for his blood for medical diagnostic purposes. No evidence was presented at trial as to what [p]etitioner's blood draw would have been necessary for in his diagnosis and treatment." He asserts that the circuit court should have prohibited the State from introducing the testimony of petitioner's blood alcohol content or, alternatively, should have directed a verdict of acquittal for fleeing from law enforcement while DUI. He contends that prior to Nurse Hollyfield's testimony no one knew that the nurse intentionally used a non-alcohol sterilizing agent to sanitize the area of the IV/blood draw, deviating from normal hospital ER protocol that an alcohol prep pad was commonly used for diagnostic, rather than forensic, purposes.[4] He asserts that Nurse Hollyfield knew that police would want the results of his blood draw to prosecute petitioner and knew that the alcohol swab would contaminate the draw, rendering it inadmissible at trial. Without citing to the record, petitioner asserts that the record reveals that Nurse Hollyfield may have obtained consent only to begin the IV, rather than to draw blood from the IV port. He further contends that there were no exigent circumstances and no search warrant was obtained. Petitioner argues that without the blood draw evidence, there was no prima facie showing of impairment and no field sobriety tests were performed at the time of petitioner's arrest. Therefore, the State would have had only the half empty bottle of rum, the odor of alcohol on petitioner's person, and petitioner's "poor judgment in fleeing from law enforcement" to support its claim that petitioner was impaired. Finally, petitioner asserts that, while he admitted that he "was drunk," those admissions were coerced by the officer's threat to charge him with attempted murder.

"A trial court's ruling on a motion in limine is reviewed on appeal for an abuse of discretion." Syl. Pt. 1, *McKenzie v. Carroll Intern. Corp.,* 216 W. Va. 686, 610 S.E.2d 341 (2004). In *State v. Lilly,* 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995), this Court explained the two-tier standard of review of a circuit court's ruling on a motion to suppress:

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and

---

W. Va. R. App. P. 10(c)(7). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules.

[4] According to Nurse Hollyfield's trial testimony, the hospital records accurately show that he used Betadine to clean petitioner's skin prior to drawing blood or inserting the IV.

definite conviction that a mistake has been made. *See State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

(Footnotes omitted).

As we have found, "[t]he constitutional provisions in the State and Federal Constitutions prohibiting unreasonable searches and seizures . . . are only applicable to the State and Federal Governments[,]" *Sutherland v. Kroger Co.*, 144 W. Va. 673, 683, 110 S.E.2d 716, 723 (1959), and they do "not prohibit searches and seizures by private citizens." *State v. Riser*, 170 W. Va. 473, 479, 294 S.E.2d 461, 466 (1982). Thus, a "search or seizure conducted by a private party does not violate the Fourth Amendment[.]" *Walter v. United States*, 447 U.S. 649, 656 (1980). In addition, while an action by a private individual implicates the Fourth Amendment when the private individual acts as an agent or instrument of the State, the burden of proving that the private party acted as an agent or instrument of the government is on the defendant. Syl. Pt. 1, *State v. Oldaker*, 172 W. Va. 258, 304 S.E.2d 843 (1983).

Here, we agree with respondent that petitioner has failed to prove that Nurse Hollyfield acted as an agent or instrument of the State. There is no evidence of government participation in, or affirmative encouragement of, the blood draw by Nurse Hollyfield from petitioner. Petitioner's motion in limine seeking to suppress the blood test results was based upon the erroneous assertions that Dep. Jenkins requested the blood draw and that a nonalcohol antiseptic was not used for the draw. In fact, Dep. Jenkins was unaware that Nurse Hollyfield had even drawn petitioner's blood until after it was completed; thus, it is clear that law enforcement did not direct the manner in which that blood draw should occur. In addition, petitioner failed to show that Nurse Hollyfield's conduct was intended solely to assist law enforcement. We agree with respondent's contention that, with regard to the agent or instrument of the State allegation, it is of no consequence that the nurse used a different sterilizing agent than alcohol; the fact that he may have had a dual purpose in conducting a search or seizure does not satisfy petitioner's burden. Importantly, Nurse Hollyfield testified that the blood draw was a medical blood draw for medical purposes and that petitioner consented to the draw. Considering all of this evidence in the light most favorable to the State, we find that the circuit court did not clearly err in determining that Nurse Hollyfield was not a State actor or by denying petitioner's motion to suppress the blood draw evidence.

In his second assignment of error, petitioner asserts that Juror H.M. was untruthful during voir dire, which constituted juror misconduct and deprived petitioner of a fair trial. Petitioner asserts that in his post-trial motions he presented ample evidence that Juror H.M. failed to disclose relevant information requested during voir dire, "which undoubtedly had the potential to impact her fellow jurors in their deliberations." According to petitioner, Juror H.M. failed to disclose that she was Facebook friends with Morgan County Deputy Wade Shambaugh; petitioner admits, however, that prospective jurors were not asked if they were Facebook friends with anyone involved in the case including potential witnesses. He contends, without citing to a specific question, that the voir dire question posed was sufficient to alert Juror H.M. to disclose the

potential conflict.[5] He asserts, without citation to the record, that Juror H.M. "was also a friend/member of the Facebook group 'The Real Voices of Morgan County' and the Morgan County Sheriff's Department page where the particulars of the chase in question were discussed and press releases posted." Petitioner further contends that the circuit court ignored the audio portion of the short chase video, wherein someone commented, "He'll never learn," which, he claims, clearly referenced petitioner. Finally, he argues that "[o]f course [p]etitioner had done that before but such evidence was excluded at the trial. A very plausible scenario exists that [J]uror [H.M.] would have related this fact, i.e., this wasn't the first time he had done this, to the rest of the jury."

This Court has long held that "[t]he true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syl. Pt.1, *State v. Wilson*, 157 W. Va. 1036, 207 S.E.2d 174 (1974). In addition,

> [t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right.

Syl. Pt. 4, *State v. Peacher,* 167 W. Va. 540, 280 S.E.2d 559 (1981). Thus, this Court has recognized the process of voir dire, meaning "to speak the truth," *Michael v. Sabado,* 192 W. Va. 585, 592, 453 S.E.2d 419, 426 (1994), as the parties' "opportunity to discover[ ] whether there are any 'relevant and material matters that might bear on possible disqualification of a juror.'" *Id.* (quoting *Human Rights Comm. v. Tenpin Lounge,* 158 W. Va. 349, 355, 211 S.E.2d 349, 353 (1975)).

We have also noted that

> [v]oir dire must be probing enough to reveal jurors' prejudices regarding issues that may arise at trial so that counsel may exercise their challenges in an informed manner. . . . Moreover, it is difficult to perceive how the right to an adequate voir dire can be denied when, given the opportunity, a defendant fails to request additional or supplementary voir dire questions. We believe it is incumbent on a defendant to bring to the trial court's attention any deficiency in the voir dire that might impair the prospects of a fair trial. Indeed, there was nothing that prevented the defendant from asking these very questions on her own behalf during voir dire if she perceived a problem with one of the potential jurors. In *State v. Beckett,* 172 W.Va. 817, 823, 310 S.E.2d 883, 889 (1983), we suggested that where a defendant does not seek additional voir dire to demonstrate possible bias, prejudice, or

---

[5] Petitioner also presents a confusing argument regarding Juror H.M.'s knowledge of individuals he names without providing any information as to who these individuals are or why they are important. Due to his continued failure to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, this Court is unable to fully understand and address these arguments.

disqualification, there can be no error for the failure to strike prospective jurors for cause. *See also State v. Ward,* 188 W.Va. 380, 393, 424 S.E.2d 725, 738 (1991).

*State v. Miller*, 197 W. Va. 588, 603, 476 S.E.2d 535, 550 (1996).

In the instant case, petitioner's counsel admitted at the hearing on the motion for a new trial that his argument related to Juror H.M. was "a little convoluted," that he lacked a "smoking gun," and that he was left to rely on circumstantial evidence. Petitioner also failed to call Juror H.M. or those individuals he claimed to be important to Juror H.M.'s alleged pre-existing knowledge of the case . The question asked during voir dire in the instant case was whether anyone was "good friends with any law enforcement?" Respondent asserts that being a Facebook "friend" does not necessarily imply that the relationship is a close one. Due to petitioner's failure to present testimony or even an affidavit from Juror H.M., in addition to his continued failure to cite to the record for any of his assertions, his argument on this point is based purely on conjecture and supposition. Therefore, we cannot find that the circuit court erred in denying petitioner's motion for a new trial on this ground.

Petitioner's final assignment of error is that the circuit court erred by failing to direct a verdict in his favor at the close of the State's case-in-chief and at the close of all evidence or, in the alternative, in failing to find that the jury's verdict was contrary to the evidence presented. Petitioner argues that, even when viewing the evidence in the light most favorable to the State, reasonable minds could not have reached the same conclusion as to petitioner's guilt with regard to the charge of fleeing with reckless disregard for the safety of others. Without citing to the record, petitioner argues that he clearly demonstrated to the jury and the court that at no time during the pursuit did he ever come close to causing an accident with any oncoming traffic or persons in close proximity to his vehicle. Petitioner claims that, at the trial in this matter, he reviewed the video evidence with the jury and pointed out that at no time did he exhibit reckless disregard for the safety of other motorists or pedestrians. However, because petitioner did not testify during the trial and there is no cite to the record in support of his claim, it is unclear how he allegedly pointed out these claims to the jury. Petitioner admits that "at first glance, [the video] seemed to show [p]etitioner driving in a dangerous and reckless manner" but asserts that, upon closer examination, it is evident that he was in control of his vehicle. He argues that he was, therefore, entitled to judgment, pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure, as to fleeing with reckless disregard for the safety of others.

Rule 29(a) provides as follows:

**(a) Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the state is not granted, the defendant may offer evidence without having reserved the right.

8

In addition, as we have previously found that

> "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (per curiam) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). Moreover,
>
>> "'[u]pon motion [for judgment of acquittal], the evidence is to be viewed in the light most favorable to [the] prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W.Va. 325, 168 S.E.2d 716 (1969)." Syl. pt. 1, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974).
>
> Syl. pt. 5, State v. *Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009).

*State v. Vilela*, 238 W. Va. 11, 21, 792 S.E.2d 22, 32 (2016).

As set forth above, petitioner admits that the video appears to show him driving recklessly and dangerously. Thus, his argument appears to be an attempt to alter this Court's perception of the video evidence; to do so is clearly contrary to the jury's verdict. When viewing the evidence in the light most compatible with petitioner's conviction for fleeing with reckless disregard for the safety of others, as required, we find that a rational jury could find guilt beyond a reasonable doubt. We, therefore, find that the circuit court did not err in denying petitioner's motion in limine, petitioner's motion for a judgment of acquittal, and petitioner's motion for a new trial.

Affirmed.

**ISSUED:** March 23, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment